

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00255-CV

———————————————

IN THE INTEREST OF J.D., A CHILD

---

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-104748-17

---

Before Pittman, J.; Sudderth, C.J.; and Birdwell, J.
Per Curiam Memorandum Opinion

## MEMORANDUM OPINION

After a bench trial, the trial court found by clear and convincing evidence that termination of the parent–child relationship between Appellant A.D. (Father) and toddler J.D. was in J.D.'s best interest and that Father had "had his parent–child relationship terminated with respect to another child based on a finding that [his] conduct was in violation of § 161.001(b)(1)(D) or (E), Texas Family Code, or substantially equivalent provisions of the law of another state, pursuant to § 161.001(b)(1)(M), Texas Family Code." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (M), (2).[1] In his sole issue, Father contends that the evidence is legally and factually insufficient to support the trial court's best-interest finding. Because we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent–child relationship between Father and J.D. is in her best interest, we affirm the trial court's judgment.

## STATEMENT OF FACTS

B.D., J.D.'s older biological sister, was born in December 2015. After a bench trial in November 2016, a trial court terminated Father's parent–child relationship with B.D. based on the finding that termination was in B.D.'s best interest as well as

---

[1]The trial court also terminated the parent–child relationship between J.D. and V.A. (Mother). Mother does not appeal.

on other findings including endangerment findings.[2] *See id.* § 161.001(b)(1)(D), (E), (2).

J.D., the subject of this appeal, was born in March 2017 while Mother was in jail. It is not clear whether Father was confined at J.D.'s birth, but he was in jail by the time the petition to terminate was filed three days after her birth. Near the end of April 2017, when J.D. was about a month old, Father pled guilty pursuant to a plea bargain to the manufacture or delivery of 4 or more but less than 200 grams of heroin in exchange for a sentence of eleven years in prison. Father committed the offense on October 11, 2015, long before J.D. was conceived but only about 2 1/2 months before the birth of her elder sister B.D.

Father also had prior convictions, including a 2014 conviction for assault causing bodily injury to a family member (Mother); a 2010 conviction for burglary of a habitation, and a 2008 conviction for burglary of a building. Mother told her counselor that Father sexually assaulted her in 2014.

In his jailhouse interview with the Texas Department of Family and Protective Services (TDFPS) conservatorship worker in this case, Father told her that:

- "[H]e was trying to do right by [J.D.]";

- "[H]e knew [that] he had messed up"; and

---

[2]The trial court also terminated the parent–child relationship between B.D. and Mother.

- "[B]eing locked up was good for him because it t[ook] him out of a bad situation."

The conservatorship worker testified that even though Father had provided TDFPS with names of family members who could serve as potential placements for J.D., terminating his parental rights to J.D. would be in her best interest because:

- Father cannot do anything to meet J.D.'s present or future needs since he is in prison;

- His incarceration prevents him from protecting her from present and future dangers;

- He has not shown that he can provide her with adequate health and nutrition;

- He has not shown that he can nurture and appropriately discipline her;

- He has not shown that he can appropriately guide and supervise her;

- He has not shown a full understanding of her needs and capabilities; and

- He "chose to commit illegal activities while he knew he had a child and so that's not showing you have the best interest of the child at heart."

By the time of trial, a home study of Father's cousin T.S., a placement he suggested, had been approved, and TDFPS intended to place J.D. with her with the goal of adoption. About a month after the termination, the trial court named T.S. as J.D.'s possessory conservator with the rights to have physical possession of J.D. and to establish her legal domicile.

## DISCUSSION

In his sole issue, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's best-interest finding.

4

## I.     TDFPS Must Prove Its Case by Clear and Convincing Evidence.

For a trial court to terminate a parent–child relationship, TDFPS must prove two elements by clear and convincing evidence:  1) that the parent's actions satisfy one ground listed in family code section 161.001(b)(1); and 2) that termination is in the child's best interest.  *Id.* § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

## II.    We Determine Whether the Evidence Is Sufficient to Support Termination Findings.

To determine whether the evidence is legally sufficient to support the trial court's best-interest finding, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *see* Tex. Fam. Code Ann. § 161.001(b)(2).  We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so.  *J.P.B.*, 180 S.W.3d at 573.  We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding.  *Id.*  That is, we consider evidence favorable to the finding if a reasonable

factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.*

The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's finding and do not supplant it with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that termination of the parent–child relationship would be in the child's best interest. Tex. Fam. Code Ann. § 161.001(b)(2); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

## III. We May Consider the *Holley* Factors in Reviewing the Best-Interest Finding.

In determining whether evidence is sufficient to support a best-interest finding, we review the entire record. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Evidence probative of a child's best interest may be the same evidence that is probative of a subsection (1) ground. *Id.* at 249; *C.H.*, 89 S.W.3d at 28. In making our determination, we must employ a strong presumption that keeping a child with a

6

parent serves the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

We also consider the evidence in light of nonexclusive factors that the trier of fact

may apply in determining the child's best interest:

(A)    the child's desires;

(B)    the child's emotional and physical needs, now and in the future;

(C)    the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the child's best interest;

(F)    the plans for the child by these individuals or by the agency seeking custody;

(G)    the stability of the home or proposed placement;

(H)    the parent's acts or omissions indicating that the existing parent–child relationship is not a proper one; and

(I)    any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at

249 (stating that in reviewing a best-interest finding, "we consider, among other

evidence, the *Holley* factors" (footnote omitted)); *E.N.C.*, 384 S.W.3d at 807.  These

factors are not exhaustive, and some listed factors may not apply to some cases.  *C.H.*,

89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be

sufficient to support a finding that termination is in the child's best interest.  *Id.*  On

the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

## IV. The Evidence Sufficiently Supports the Trial Court's Best-Interest Finding.

To support his sufficiency argument, Father points only to the evidence that TDFPS had approved a placement with his cousin T.S. Father argues,

> Public policy dictates that . . . TDFPS should not seek termination of parental rights and the trial court should not grant termination of parental rights when a child is placed with family and in a protective home.

> Here, . . . TDFPS approved placement with the paternal cousin and based on those facts, . . . TDFPS failed to satisfy its burden of proof that termination is in the best interest of the child.

Father cites no direct authority for his public-policy argument that placing a child with a family member should insulate a parent from losing his parental rights. *Cf. In re D.O.*, 338 S.W.3d 29, 38 (Tex. App.—Eastland 2011, no pet.) (rejecting parent's assertion that "the Texas Legislature has determined that it is the policy of the State of Texas to seek a relative placement of the child as a priority to termination of the parental rights and as a priority to naming the Department as managing conservator") (internal quotation marks omitted). We therefore reject Father's argument. In the interest of justice, we observe the following:

- By the trial, Father had been incarcerated for at least fifteen of J.D.'s sixteen months and still had several years left of his sentence;

- During his incarceration, Father had done nothing to support J.D. physically, emotionally, or financially and would not be able to offer such support for some years; and

- TDFPS's plan to permanently place J.D. with the adoption-motivated cousin Father suggested as a potential placement offered Father's relatives some chance to have a relationship with J.D. and J.D. the possibility of connecting with older siblings while also giving her the stability of a permanent home.

Accordingly, applying the appropriate standards of review, see *J.P.B.*, 180 S.W.3d at 573 (providing legal-sufficiency standard of review); *C.H.*, 89 S.W.3d at 18–19, 28 (providing factual-sufficiency standard of review), we hold that the evidence is legally and factually sufficient to support the trial court's best-interest finding, and we overrule Father's only issue.

## CONCLUSION

Having overruled Father's sole issue, we affirm the trial court's judgment.

Per Curiam

Delivered: January 10, 2019